**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**PIKEVILLE**

**CRIMINAL ACTION NO. 7:20-CR-21-S-CHB**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**              **SENTENCING MEMORANDUM, ADDRESSING**
                    **UNRESOLVED GUIDELINE OBJECTIONS**

**CHARLES EVANS HALL, JR.**                                          **DEFENDANT**

\* \* \* \* \*

This matter is before the Court preceding Defendant Charles Evans Hall, Jr.

sentencing. Pursuant to the Court's sentencing order, the United States submits the

following memorandum regarding the material objections to the Defendant's presentence

report (PSR). [PSR at 30-36.]

The Defendant submitted a total of seven objections to the PSR, five of which

affect the Defendant's guideline calculations. [PSR at 30-36]. Each will be addressed

below:

**I.      The Defendant Engaged in Sexual Acts with the Victim Pursuant to U.S.S.G.**
        **§2G2.1(b)(2)(A).**

U.S.S.G. §2G2.1(b)(2)(A) applies a two-level enhancement, if the offense involved the

commission of a sexual act or sexual conduct. U.S.S.G. §2G2.1(b)(2)(A), Application Note 2

states, "sexual act" has the meaning given that term in 18 U.S.C. § 2246(2). Pursuant to 18

U.S.C. § 2246(2), sexual acts include: (A) contact between the penis and the vulva…for purposes

of this subparagraph contact involving the penis occurs upon penetration, however slight; and

(B) …. contact between the mouth and the vulva…"

1

The term "offense" in U.S.S.G. §2G2.1(b)(2)(A), includes the relevant conduct listed in U.S.S.G. §1B1.3. As defined in U.S.S.G. §1B1.1, "offense" means, "the offense of conviction and all relevant conduct under §1B1.3 (relevant conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(I).

U.S.S.G. §1B1.3(a)(1) defines relevant conduct as, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." "Relevant conduct" also includes, "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions." U.S.S.G. §1B1.3(a)(3). "The goal of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense." *United States v. Kappes*, 936 F.2d 227, 229 (6th Cir. 1991).

To be relevant conduct, such conduct must meet the threshold qualification of being a criminal offense which carries incarceration. *United States v. Hodge,* 805 F.3d 675, 679 (6th Cir. 2015). Relevant conduct can include state crimes and need not result in a conviction. *Id.* Pursuant to Ky. Rev. Stat. §510.060, "a person is guilty of rape in the third degree when: being twenty-one (21) years old or more, he or she engages in sexual intercourse with another person less than sixteen (16) years old." Rape in the third degree is a Class D felony. Pursuant to Ky. Rev. Stat. §510.010, "sexual intercourse" is defined as "includes penetration of the sex organs of one person by any body part…sexual intercourse occurs upon any penetration, however slight…" Pursuant to Ky. Rev. Stat. §510.090, "a person is guilty of sodomy in the third degree when: being twenty-one (21) years old or more, he or she engages in deviate sexual intercourse

with another person less than sixteen (16) years old." Sodomy in the third degree is also a Class D felony. Pursuant to Ky. Rev. Stat. §510.010, "deviate sexual intercourse" is defined as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another…"

To be relevant conduct, such conduct must "bear some logical relationship to the offense of conviction." *Hodge*, 805 F.3d at 680 (citing *United States v. Ellison*, 113 F.3d 77, 83 (7th Cir. 1997)). There is no requirement under the Guidelines or Sixth Circuit law that a sexual act under U.S.S.G. §2G2.1(b)(2)(A) occur simultaneously or that the explicit image capture such contact for the enhancement to apply. *Id.* at 681.

In *United States v. Gonyer*, 761 F.3d 157 (1st Cir. 2014), the First Circuit found that hands on offenses that occurred a year prior to the producing of child pornography were "part and parcel of the offense of conviction as defined by the statute" because the government had to prove the defendant "employed, used, persuaded, induced, enticed, or coerced" the victim to engage in the sexually explicit conduct depicted in the photos. In *Gonyer* a farmhand persuaded a 16-year-old boy to take photographs of his genital, while the photographs did not contain sex acts the First Circuit upheld the two-level enhancement based upon the sexual contact that began a year earlier. *Id.* at 167.

Gonyer argued that the enhancement should not apply because the sexual contact and photographs occurred at different times and the photos did not depict the sexual acts. However, the First Circuit found all of this conduct relevant and part of the "grooming" process. *Id.* The First Circuit held:

> In challenging the application of this enhancement, Gonyer again makes the mistake of viewing the offense too narrowly. Focusing on the photographs that TT took at Gonyer's request, he argues that because his sexual abuse of TT is not depicted in the photographs, the abuse and photographs "occurred at different

3

times," and "[t]he photos did not depict the same type of sexual misconduct [he] engaged in" with TT, the "sexual act or conduct" enhancement cannot be applied in this case. But, as just discussed, the offense of sexual exploitation of a minor consists of more than creating photographs, and, indeed, need not involve an actual photograph at all. *See Smith*, 795 F.2d at 846. So, when determining whether the "offense involved" a sexual act or contact, a district court need not look solely at any photographic or other visual images produced as a result of the offense. The court may also consider whether the defendant's acts of "employing, using, persuading, inducing, enticing, or coercing" the minor to engage in sexually explicit conduct for the purpose of producing a depiction of that conduct involved a sexual act or contact.

*Id.* at 169.

The First Circuit in *Gonyer* upheld the district court's findings that the defendant's sexual abuse of the victim qualified for the two-level enhancement even though the photographs themselves did not depict sexual contact, because "it is entirely plausible that [defendant's] inappropriate sexual relationship with [victim] groomed [him] to participate in [defendant's] production of pornographic images." *Id.* at 170 (quoting *United States v. Holt*, 408 Fed. Appx. 229, 238 (11th Cir. 2010)).

In the Ninth Circuit case of *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008), a 14-year-old victim met Stoterau at a gay and lesbian support group. Stoterau persuaded the victim to take sexually explicit photographs for use on the website rentboy.com. *Id.* Stoterau would use the photographs to arrange paid sexual encounters between the victim and various men. *Id.* Stoterau entered a plea to one count of transporting child pornography. *Id.* at 996. Stoterau appealed the application of an enhancement under U.S.S.G. §2G2.1(b)(2)(A), because the images Stoterau uploaded did not depict sexual contact. *Id.* at 997. The Ninth Circuit held that the victim's sexual contact with other men was a "direct result or flowed naturally" from Stoterau's uploading the images to the rentboy.com website. *Id.* at 998. Therefore, qualifying as relevant conduct pursuant to U.S.S.G. §1B1.3(a)(3), "all harm that resulted from the acts and

omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions…"  "This conduct directly resulted in [the victim] undertaking sexual acts with rentboy.com customers…[t]hese sexual acts constituted a harm to [the victim], an underage boy."  *Id.*  The sexual contact in *Stoterau* occurred after the offense of conviction and the sexual contact was not completed by Stoterau but instead other men.  *Id.*

The standard of proof applicable to relevant conduct determinations under the U.S.S.G.s is a preponderance of the evidence. *See, e.g.*, *United States v. Brika*, 487 F.3d 450, 460-61 (6th Cir. 2007); *see also United States v. Jones*, 829 F.3d 476 (6th Cir. 2016) (holding due process does not require the district court to employ a standard higher than preponderance of the evidence when determining offense level under U.S.S.G.). In *United States v. Hammond*, 637 Fed. App'x 897 (6th Cir. 2016), the Sixth Circuit found "[s]entencing courts may consider hearsay without any confrontation requirement 'so long as the evidence in the presentence report bears some minimal indicia of reliability in respect of defendant's right to due process.'" *Id.* at 901 (quoting *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992)).

The Sixth Circuit has determined that video recorded victim interviews with law enforcement and written victim statements are sufficient to meet the preponderance of the evidence standard. *See, e.g.*, *United States v. Miller*, 755 F. App'x 440, 443 (6th Cir. 2018) (holding videotaped interviews allowed district judge to observe minor victim's demeanor and gauge her credibility); *United States v. Pirosko*, 787 F.3d 358, 373 (6th Cir. 2015) (holding pattern enhancement proven based on out-of-court letters submitted by defendant's daughters recounting abuse more than a decade earlier).

In the present case, the Victim testified under oath and subject to thorough cross-examination. The Victim stated that the Defendant penetrated her vagina with his penis, as well

as performed oral sex on her. These sexual acts occurred in September of 2018 at the Mountain Heritage Festival during the charged date range. The Defendant has been convicted, contrary to his plea, of employing, using, inducing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct from January of 2018 through November 20, 2018. [R. 21].

The sexual acts were contemporaneous with the charged offense and involved the same Victim. Such physical contact was part and parcel to the production of the explicit images. The Defendant often used and referenced the sexual acts when inducing, coercing, and using the Victim to create additional explicit content over Snapchat. Furthermore, the Defendant's conduct was not merely classic "grooming" behavior but it was certainly an additional harm that naturally flowed from the charged conduct.

## II.    The Defendant Directed the Distribution of Explicit Images to Himself.

U.S.S.G. §2G2.1(b)(3) provides for a two-level enhancement if the defendant knowingly engaged in distribution. Pursuant to U.S.S.G. §2G2.1, Application Note 3, this includes if the defendant aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution. Here, the Defendant directed the Victim to produce and distribute the explicit images to the Defendant. Therefore, the Defendant commanded or induced the distribution of images to himself. The government has been unable to find a Sixth Circuit case directly on point. There is no evidence that the Defendant distributed the child exploitative material to a third party or back to the Victim.

In *United States v. Broxmeyer*, 699 F.3d 265 (2nd Cir. 2012), the Second Circuit applied the §2G2.1(b)(3) enhancement where the victim distributed images of herself to Broxmeyer and Broxmeyer redistributed those images to another victim. *Id.* at 282. Broxmeyer was convicted of

attempted production of child pornography. *Id.* at 270. In light of Broxmeyer's failure to voice objections at his sentencing hearing the Second Circuit reviewed the district court's rulings under plain error. *Id.* at 279. The Second Circuit stated it need only look to Broxmeyer's redistribution to rebut his challenge of the enhancement, however the Court then proceeded to address the victim's distribution to Broxmeyer. The Court specifically stated:

> Here, the record evidence demonstrates that the object of the attempted crime of conviction was to induce a minor to produce sexually explicit images of herself. In this context, Broxmeyer's procurement of a sexually suggestive, albeit not sexually explicit, image of K.T. sufficed to prove him guilty of attempt. See generally *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir.2011) (observing that conviction for attempt requires proof that defendant (a) had intent to commit object crime and (b) engaged in conduct amounting to substantial step towards commission). But Broxmeyer's attempt to achieve his criminal objective hardly concluded with that procurement. After receiving the suggestive image of K.T. in her underwear, Broxmeyer continued to cajole and badger the girl for a sexually explicit photograph of herself, ultimately receiving the image of K.T. inserting a finger into her vagina. The harm resulting from inducing a minor's production and transmittal of such a sexually explicit image of herself is distinct from and greater than the harm reflected in the production and transmittal of the suggestive underwear image. Moreover, the production of a sexually explicit image was the real object of the attempt crime of conviction and, therefore, properly treated as relevant conduct for purposes of determining Broxmeyer's offense level.

*Id.* at 282-83.

In *United States v. Mudd*, 681 Fed. Appx. 425 (6th Cir. 2017), the Sixth Circuit cited *United States v. Broxmeyer* for the notion that federal courts have adopted a board interruption of the enhancement's applicability. The Sixth Circuit stated:

> The text of § 2G2.1, the application notes accompanying it, and the case law interpreting it all weigh in favor of its applicability in cases where the defendant shows a victim child pornography produced by a third party in order to "groom" the child for a contemplated production. The meaning of "distribution" in common parlance would certainly include purposeful sharing with another. See Distribution, Black's Law Dictionary (10th ed. 2014) ("The act or process of ... giving out."). Further, the definition of "distribution" under § 2G2.1 is capacious, including "any *429 act ... related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G., Application Note 1. The Application Note refers to "material involving sexual exploitation of a minor" generally; it does not make any attempt

to limit the definition of that phrase to materials produced by the defendant. *Id.* Moreover, federal courts reviewing the distribution enhancement have adopted a broad interpretation of its applicability. *See United States v. Broxmeyer*, 699 F.3d 265, 282 (2d Cir. 2012) (distribution of images produced by the defendant after completion of the production offense sufficient to justify distribution enhancement because the court could legitimately consider "not only the specific conduct satisfying the elements of the crime of conviction, but all conduct 'relevant' to the crime as detailed in § 1B1.3").

Similar to *Broxmeyer*, production of child pornography does not require an image be produced. The subject statute does not criminalize the explicit image itself. *Gonyer*, 761 F.3d at 167.  The elements certainly do not require an image be distributed to and received by the defendant. The question becomes whether the transmission of a produced image is a separate harm from the act of production of the same image. Unlike *Broxmeyer* and *Mudd*, we are faced with a scenario in which the defendant did not engage in redistribution to a third party after the victim distributed the image to the Defendant. Unlike *Broxmeyer*, the images being distributed are not relevant conduct but are charged conduct. Therefore, the two-level enhancement pursuant to U.S.S.G. §2G2.1(b)(3) may be inappropriate in the Defendant's case.

### III.     The Defendant Abused a Position of Public Trust to Significantly Facilitate the Commission of the Offense Pursuant to U.S.S.G. §3B1.3.

U.S.S.G. §3B1.3, states "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. §3B1.3, Application Note 1 states:

Definition of "Public or Private Trust".—"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This

8

adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

Here, the Defendant met the Victim in his capacity as her middle school teacher. This is where the relationship and grooming began. The Defendant earned the Victim's trust in this capacity. The Victim testified that after class, the Defendant would slip his hand between the Victim's legs and touch her vagina and buttocks over her clothing. The Victim testified to other inappropriate contact and comments which occurred *inside* the Defendant's classroom. Furthermore, the Defendant instructed the Victim to setup a secondary Snapchat account at a school sporting event. This account was ultimately used to produce the subject images. This was all part of the grooming process which ultimately led to the creation of the explicit images. The Defendant would have never met the Victim, gained her trust, nor had the opportunity to fondle her in a private setting absent his role as her middle school teacher. The Defendant was in a unique position to cultivate a relationship and get the Victim alone without raising any concerns. It matters not that eventually the Defendant moved on to another high school at the end of the offense conduct after the grooming period had ceased. The government is strained to find a more egregious instance in which an individual abuses their position of public trust. Parents do not send their children to school to be sexually fondled, groomed, and preyed upon by the very people we trust to protect them in our absence. Likewise, children lookup to their teachers as mentors and authority figures making them more vulnerable to such conduct.

In *United States v. Booth*, 996 F.2d 1395 (2nd Cir. 1993), the Second Circuit applied the enhancement to a teacher who committed sexual acts upon students. The Second Circuit held, "that Booth's position as a school teacher facilitated both his access to the victims and the boys'

gaining their parents' permission to be in his company." *Id.* at 1397. "At the sentencing hearing,

the district court found that Booth's status as a public school teacher significantly contributed to

the commission of these offenses, both by giving him an opportunity to establish relationships

with children and by giving him the credibility and authority that made parents willing to entrust

their children to his care…[t]here can be no doubt on this record that we are faced with a

significant breach of trust-a breach of trust rooted in Booth's status as a public school teacher.

The two-step enhancement for abuse of trust was appropriate." *Id.*

In *United States v. Stover*, 951 F.2d 364, 1991 WL 279016 (9th Cir. 1991), the Nineth

Circuit similarly held the enhancement applied to a small community teacher who was convicted

of aggravated sexual abuse of students:

> Because Stover was an elementary school teacher he gained the public trust of the
> community to associate freely with the young children. Thus, a trust relationship
> was established. Stover concealed the sexual abuse of the children by conducting
> the improper activities in his apartment and instructing the children not to tell.
> Thus, it was nearly impossible for the parents to detect the improper activities,
> since Stover had "unwatched and exclusive control" over the children for blocks
> of time. Therefore, the district court did not err by determining that Stover was
> entitled to a two level increase for abuse of trust.

*Id.* at 2 (internal citations omitted).

### IV. Application of U.S.S.G. §3B1.4 Applies Where the Defendant Uses a Minor as Both the Model and Photographer

At first blush, it appears that the application of U.S.S.G. §3B1.4 in a production case

would be double counting. However, that is not the state of the law when a defendant uses a

victim as both the model and photographer.

In *United States v. Hall*, 733 Fed. Appx. 808 (6th Cir. 2018), the Sixth Circuit cited

*Broxmeyer* in applying the U.S.S.G. § 3B1.4 enhancement to a production offense. Hall would

use nude images of victims to demand more images by threatening to disclose the originals. Hall

also sent the images of victims to other victims and their boyfriends to obtain additional images.

*Id.* at 810-11. The Sixth Circuit held:

> Hall contends that the 2-level "use of a minor" enhancement, U.S.S.G. § 3B1.4, was improper. In calculating Hall's guideline range, the district court added two levels to Hall's offense-level tabulation, pursuant to § 3B1.4, based on its finding that Hall used a minor to commit or further the crime, i.e., Hall used the nude pictures obtained from FV-1 to coax FV-3 and to barter with FV-2's minor boyfriend. The court also relied on *United States v. Broxmeyer*, 699 F.3d 265, 281 (2d Cir. 2012), in finding that § 3B1.4 applies to a scenario, as we have here, in which a minor photographs herself, i.e., acts as both photographer and subject.
>
> Hall argues that the application of § 3B1.4 was improper because *Broxmeyer* applies only when a defendant uses one minor to photograph another minor. That is both factually incorrect, as *Broxmeyer*, 699 F.3d at 281, applies to a scenario such as we have here in which a minor photographs herself, and legally irrelevant, as the district court alternatively applied § 3B1.4 because Hall used the nude pictures obtained from FV-1 to coax FV-3 and to barter with FV-2's minor boyfriend. Thus, we need not decide whether the district court's reliance on *Broxmeyer* was appropriate. Hall has raised no legitimate claim of error on this issue. This claim fails.

*Id.*

Here, the Defendant used the Victim as both the model and photographer. The Defendant could have accomplished the totality of the elements and harm under the charged offense by simply using the Victim as the model. However, the Defendant also used the Victim as the photographer. He directed her to create particular images to suit his fancy. Therefore, under *Hall*, the Sixth Circuit has held the application of §3B1.4 is proper.

### V.      The Defendant Engaged in Numerous Instances of Obstruction Pursuant to U.S.S.G. §3C1.1.

Per U.S.S.G. §3C1.1, if a defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, the offense level is to be increased by two-levels. Pursuant U.S.S.G. §3C1.1, Application Note 1 this

adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closed related case, such as that of a codefendant.

The government relies upon the trial testimony and exhibits to prove the following categories of obstruction. (1) In November of 2018, the Defendant repeatedly badgered the Victim for her account passwords in order to delete incriminating evidence after he was interviewed by the Kentucky State Police (KSP). U.S.S.G. §3C1.1, Application Note 4(A) states threatening, intimidating, or otherwise unlawfully influencing a … witness … directly or indirectly, or attempting to do so, constitutes obstruction of justice. The Defendant goes so far as to threaten the Victim with taking his own life. [PSR at 9.] The Defendant tells the Victim if she does not help destroy evidence, he will lose his children. *Id.* The Defendant even threatens the Victim that she too will face imprisonment if the images are recovered. *Id.* Per U.S.S.G. §3C1.1, Application Note 4(D), destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding, or attempting to do so, is to be considered as obstructive conduct. The evidence at trial established the Defendant deleted the majority of his Snapchat account, whereas material was able to be recovered from the Victim's account.

(2) The Defendant continued to harass the Victim through third parties through February of 2020. Specifically, the Defendant requested the Victim make another statement to prevent the Defendant's conviction. U.S.S.G. §3C1.1, Application Note 4(B), committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction, is to be regarded as

obstructive conduct. The Defendant attempted to get the Victim to recant her prior statement through the Ciocs and his mother's Facebook page.

(3) The Defendant testified under oath that his minor son and ex-wife knew his phone password and had access to his social media accounts. The Defendant implied his family wrote the sexual content at issue. Finally, the Defendant testified his mother's Facebook posts, which were written at his direction, were aimed at his ex-wife and son due to their usage of his social media accounts. (4) The Defendant testified elaborately and extensively about raising money for charity at the Mountain Heritage Festival and being too busy to sneak away to sexually assault the minor Victim in his truck.

A court may impose USSG § 3C1.1 if it identifies material, perjured testimony. *See United States v. Roberts*, 919 F.3d 980, 990–91 (6th Cir. 2019). Not every accused who testifies at trial and is convicted will rate an enhancement for obstruction. *United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *United States v. Castro*, 960 F.3d 857 (6th Cir. 2020), the Sixth Circuit stated:

> When a defendant objects to the application of an obstruction enhancement based on his trial testimony, the sentencing court "must identify those particular portions of the defendant's testimony that it considers to be perjurious," and "must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019) (*quoting United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997)) (internal quotations omitted). Those factual predicates are that (1) the defendant gave false testimony (2) concerning a material matter and (3) with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. *Dunnigan*, 507 U.S. at 94, 113 S.Ct. 1111.

In *United States v. Phelps*, 2021 WL 4315947 (6th Cir. 2021), the Sixth Circuit recently upheld an obstruction enhancement where the defendant perjured himself at trial. In *Phelps* the district court found "that Phelps lied on the stand when, for example, he denied telling victims

that he was the heir to the Morton Salt dynasty and that his family trust had hundreds of millions of dollars to back up their investments." *Id.* at 1. The district court found ample evidence in the record that Phelps lied and the Sixth Circuit found "no fair minded reason to diverge from the district court's and jury's legitimate rejection of Phelps's story." *Id.* Phelps also attempted to assert such an enhancement would have a "chilling effect" on future defendants. *Id.* The Sixth Circuit addressed this argument by holding:

> Phelps also worries that applying this enhancement will chill future defendants' willingness to testify. But the same could be said of our prior cases applying the enhancement. *United States v. Castro*, 960 F.3d 857, 870–71 (6th Cir. 2020). Plus, the opposite rule—that the enhancement could never be used for criminal defendants who lie on the stand—has problems of its own. In the end, the district court showed that it appreciated both sides of the issue, acknowledged that it did not want "to chill a defendant's right to testify," R.256 at 16, and permissibly thought Phelps earned the enhancement anyway.

*Id.*

The Defendant here wove an elaborate and lengthy story about volunteering his time for a charity at the Mountain Heritage Festival. The Defendant detailed how he was working a stand and preparing food at a nonstop pace. He even illustrated his story with pictures from the festival. All of this was done to bolster his claim that he never had sexual intercourse with the Victim on the day in question. Furthermore, the Defendant told the jury that both his ex-wife and his minor son had the password to his phone and used his phone. The Defendant's ex-wife and his minor son both testified at trial that neither knew his password and that the Defendant's phone never left his sight. The Defendant furthered his theory by telling the jury that the Facebook messages on his mother's Facebook page were directed at his ex-wife and son because he knew who set him up. The Defendant asserted that the subject Facebook messages were not directed at the Victim but instead suspected perpetuators.

14

## VI.    Conclusion

Therefore, the United States respectfully requests the Court overrule the Defendant's objections to the PSR and apply enhancements pursuant to U.S.S.G. §2G2.1(b)(2)(A), §3B1.4 §3B1.3, and §3C1.1. The Government relies upon the testimony and exhibits admitted in the Defendant's jury trial. The Government reserves the right to present additional testimonial and documentary evidence at the sentencing hearing. The Government concurs that an enhancement pursuant to §2G2.1(b)(3) is not appropriate on this record.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:  /s/ Jenna E. Reed
Assistant United States Attorney
601 Meyers Baker Road, Suite 200
London, Kentucky 40741
(606) 330-4829
Jenna.Reed@usdoj.gov

## CERTIFICATE OF SERVICE

On February 14, 2022, I electronically filed this document through the ECF system, which sent this document by email to counsel of record.

/s/ Jenna E. Reed
Assistant United States Attorney